## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

COLUR WORLD, LLC,

*Plaintiff*,

vs.

SUPMEDIC, INC., a/k/a BEASTEK a/k/a MEDGUY,

*Defendant*.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Colur World, LLC ("Plaintiff" or "Colur World"), by and through its undersigned counsel, Blank Rome LLP, hereby files this Complaint against Defendant Supmedic, Inc. ("Defendant" or "Supmedic"), and avers the following:

## THE PARTIES

1.      Plaintiff Colur World, LLC is a Delaware company having a place of business at 800 Primos Ave., Folcroft, PA 19032.

2.      Upon information and belief, Defendant Supmedic, Inc. is a California corporation having a principal place of business at 17232 Railroad Street, City of Industry, CA 91748, and Defendant's CEO and Registered Agent is an individual named Ivan Zhou.  Defendant has represented to the California Secretary of State that alternative principal locations include 9216 Broadway, Temple City, CA 91780 and 12281 Craigburn Circle, Eastvale, CA 91752.

3.      Upon further information and belief, Defendant Supmedic Inc. is also known as, or operates under, the names "Beastek" or "Medguy" as it pertains to this litigation.

## JURISDICTION AND VENUE

4.      This is an action for trademark infringement and unfair competition in violation of the laws of the United States and the Commonwealth of Pennsylvania. Plaintiff seeks an injunction and an award of profits, treble damages, and related relief.

5.      This Court has exclusive subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 because the action presents a federal question under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), and particularly under the basis of 28 U.S.C. § 1338 (jurisdiction over civil actions arising under the Trademark Act and supplemental claims of unfair competition).

6.      This Court has supplemental jurisdiction over the claims brought under state statutory law and common law pursuant to 28 U.S.C. §§ 1338(b) and 1367. This Court may assume jurisdiction over all state law claims, as all federal and state claims are based on the same nucleus of operative facts. Judicial economy, convenience, and fairness to the parties will result in such assumption of jurisdiction.

7.      This Court has personal jurisdiction over Defendant because Defendant, *inter alia*, transacts business in the Commonwealth of Pennsylvania and within this District, engages in a persistent course of conduct in the Commonwealth of Pennsylvania and within this District, and expects, or should reasonably expect, its acts to have legal consequences in the Commonwealth of Pennsylvania as a result of acts directed towards the state.

8.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because Defendant conducts, or has regularly conducted, business in this District, including advertising and selling its products to Pennsylvania residents through the Internet and physically delivering such goods into this District, which constitutes infringement on Colur World's

trademarks. As such, Defendant expects, or should reasonably expect, its acts to have legal consequences in this District.

## FACTUAL BACKGROUND

### Plaintiff's Business and Trademarks

9.    Colur World is the exclusive owner of all right, title and interest in and to a trademark consisting of the **COLOR PINK** (the "COLOR PINK Mark"), as well as the word mark **PINK NITRILE** (the "PINK NITRILE Mark"), for use with "gloves for medical and dental use, made of nitrile" (the "Goods") The COLOR PINK Mark and the PINK NITRILE Mark may be referred to herein collectively as the "PINK Marks".

10.    Colur World is the owner of the following United States trademark registrations:

- U.S. Registration No. 3,172,669 for the COLOR PINK Mark (  );;

- U.S. Registration No. 4,527,774 for the PINK NITRILE Mark;

- U.S. Registration No. 3,170,261 for the PINK NITRILE Mark.

See **Exhibit A** attached hereto for true and correct copies of the Registration Certificates for each of the above-referenced PINK Marks from the United States Patent and Trademark Office's ("USPTO") Trademark Status and Document Retrieval system.

11.    The PINK Marks are valid and subsisting.

12.    Colur Word, on its own and through its numerous licensees and related companies, has made continuous and exclusive use of its distinctive PINK Marks in the marketing and sale of the Goods throughout the United States since at least as early as 2005.

13.    Colur World is recognized as a source of Goods sold through use of the PINK Marks, to include PINK NITRILE gloves sold in the COLOR PINK.

3

14.     Colur World achieved this recognition as a result of this longstanding, exclusive and continuous marketing, promotion, advertisement and sale of products under the PINK Marks, and adherence to high standards of quality control.  The PINK Marks have met with extraordinary public and trade acceptance and have acquired substantial goodwill and trademark distinctiveness in the minds of the relevant trade and public as an indicator of a single source for the Goods sold under the PINK Marks.

15.     Since 2007, Colur World has licensed the right to use the PINK Marks to the world's largest and most prominent manufacturers and distributors of gloves in the medical and dental fields. Colur World's licensees jointly own 60% of the market share in the medical and dental gloves industry.

16.     Colur World generates millions of dollars annually in connection with the PINK Marks.

17.     For the past 20 years, Colur World and its licensees have spent a substantial amount of money, time, energy, investment, and resources into marketing, promoting, advertising and selling products under the PINK Marks.

18.     Each package of nitrile gloves sold by licensees that display the PINK Marks, at a minimum, display the "®" notice symbol in connection with the PINK NITRILE Mark and each package provides written notice informing purchasers that "The COLOR PINK is a Registered Trademark of Colur World, LLC", thereby putting the public on actual and constructive notice of Colur World's rights in and to the registrations of the PINK Marks.

19.     As a result of its longstanding and continuous marketing, promotion, advertisement, and sale of products under the PINK Marks, the relevant trade and the public have

come to immediately associate the PINK Marks with Colur World and to expect goods bearing the PINK Marks to have a connection or association with Colur World.

20.     Over the past two decades, Colur World has also vigilantly policed and enforced its rights so as to prevent any unauthorized use of the PINK Marks. For example, Colur World has filed separate infringement actions in Federal Court, which have ended favorably for Colur World and the Defendants taking licenses to the PINK Marks. Colur World has also enforced its rights by sending cease and desist letters to known infringers and filing oppositions and cancellations with the USPTO against infringing trademark applications and registrations.

### **Defendant's Infringing Conduct**

21.     Upon information and belief, Defendant is a manufacturer, distributor, importer, and wholesaler of disposable gloves, including exam-grade gloves made of nitrile for medical and/or dental use. *See* https://supmedic.com/about-us/ (a copy of which is attached as **Exhibit B**).

22.     Defendant owns, has a license to use, or has applied for at least three (3) federally registered trademarks which it uses in connection with the sale of nitrile gloves for medical and/or dental use.  These include **SUPMEDIC** (U.S. Reg. No. 7016543), **BEASTEK** (U.S. Serial No. 98503577), and **MEDGUY** (U.S. Serial No. 98545076) (collectively, the "Defendant Marks"). Copies of the U.S. Patent and Trademark Office information for the Defendant Marks is attached as **Exhibit C**.

23.     Notwithstanding Colur World's prior and well-established common law and federal statutory rights in the PINK Marks, and with at least constructive notice and/or actual notice, Defendant has adopted and used the PINK Marks on nitrile medical and dental gloves, as well as its related marketing and promotion of such goods in United States commerce.

24.     Defendant unlawfully uses an imitation or confusingly similar iteration of the PINK Marks (the "Infringing Marks") directly on its packaging for its nitrile examination gloves, which it sells, offers for sale, produces, and distributes without the prior authorization of Colur World (the "Infringing Products").  Further, Defendant has unlawfully permitted Infringing Products to be marketed, advertised, or promoted through the use of the PINK Marks on websites.

25.     For example, the gloves represented below are manufactured, sold, and/or offered for sale by Defendant using the Infringing Marks on packages bearing the various Defendant Marks (as shown on the packaging):



26.     Further, upon information and belief, Defendant sells, offers for sale, markets, advertises, or distributes its Infringing Products through various groups such as Sam's Club, Amazon, eBay, Shopify, TikTok, Costco, Walmart, and Target, as shown in **Exhibit D** (a screenshot of the Supmedic website at https://supmedic.com),  and other unlisted third parties, such as IBSpot (collectively, "Partners").

27.     Colur World expressly objects to Defendant's use of any Partners to sell Infringing

Products, as doing so improperly creates the impression that Colur World has authorized the

distribution of the Infringing Products across numerous channels of trade (when in reality, Colur

World has **never** authorized Defendant's unlawful actions).   Further, Defendant has misled, and

continue to mislead, the Partners into furthering Defendant's unlawful misappropriation beyond

the scope of sales made directly by Defendant.

28.     As only a series of examples of Defendant's advertisement of Infringing Products

through Partners, numerous webpages on Amazon display Infringing Products that make use of

Infringing Marks, including both unlawful imitations of the COLOR PINK Mark and the PINK

NITRILE Mark.   Various screenshots of webpages from Amazon are attached as **Exhibit E**, and

samples are shown below that are representative of this unlawful infringement:

a.   Sample #1: unlawful uses of the PINK Marks on the cover of the Beastek storefront:



b.  Sample #2: the unlawful Beastek storefront page titled using the PINK NITRILE

Mark to sell Infringing Products in the COLOR PINK:



c.   Sample #3: the Supmedic storefront on Amazon under the "Supmedic" page:



d.   Sample #4: the Supmedic storefront on Amazon under the "Beastek" page:



e.    Sample #5: the Supmedic storefront on Amazon under the "Medguy" page:



29.     Upon information and belief, Defendant continues to sell or offer for sale the Infringing Products through its various Partners by using the Infringing Marks (including unlawful imitations of both the COLOR PINK Mark and the PINK NITRILE Mark).

30.     Defendant unlawfully markets, offers for sale, and sells the Infringing Products bearing the Infringing Marks in close proximity to, and on the same webpage as, other gloves made of nitrile which are sold for medical purposes.  Further, Defendant has sold, offered for sale, or advertised using both the Defendant Marks and the Infringing Marks, showing a clear intent to trade on the goodwill of Plaintiff's PINK Marks.

31.     Colur World never consented to Defendant's use of the PINK Marks.

32.     Defendant targets the same consumers, or substantially the same consumers, as Colur World, namely medical and dental entities. Defendant also sells the Infringing Product at a comparable price to that of Colur World's Goods.

33.     Defendant's unlawful adoption and use of the PINK Marks violates Colur World's rights in the PINK Marks and is likely to cause confusion, mistake, or deception as to the source, association, affiliation or sponsorship of the Infringing Product. Ordinary consumers will mistakenly believe that Defendant's goods are manufactured, distributed, owned, sponsored, or approved by Colur World.  Defendant's use of the PINK Marks wrongfully implies an affiliation between Colur World and Defendant, or sponsorship by Colur World of Defendant's goods.

34.     Colur World sent a cease-and-desist notice in writing, dated January 14, 2025, to Defendant placing Defendant on actual notice of its infringement of Colur World's intellectual property rights and instructing Defendant to cease and desist immediately from any further use or plans to use the Infringing Marks (*i.e.* the unlawful imitations of the genuine PINK Marks). A true and correct copy of this correspondence is attached as **Exhibit F**.

35.     As further shown in **Exhibit F**, a representative of Colur World sent another formal demand for Defendant to cease and desist from its infringing activity on January 17, 2025.  In that correspondence, Colur World sought to clarify the scope of its trademark rights, which it has held since 2005, to prevent needless litigation.

36.     Despite the notices, Defendant continues to willfully use the PINK Marks without Colur World's authorization and with the intent to infringe on Colur World's rights.  In fact, Defendant blatantly rejected Colur World's trademark rights on both January 15, 2025 and January 19, 2025, indicating that Defendant intended to knowingly, willfully, or maliciously continue its sale of Infringing Products through use of the Infringing Marks.

37.     Defendant's conduct was and is designed to trade upon the valuable goodwill and business reputation associated with the PINK Marks.

38.     Colur World has been, is now, and will continue to be irreparably injured by Defendant, unless enjoined by this Court.

## COUNT I
### Infringement of Federally Registered Marks
### Under Federal Law - Lanham Act, 15 U.S.C. § 1114

39.     All foregoing and following allegations are incorporated herein by reference as though fully set forth herein.

40.     Plaintiff is the owner of federal trademark Registrations for the PINK Marks set forth in this Complaint, and enjoys the exclusive rights to use or license the use of those marks nationwide.  This is a right Colur World has held for the past 20 years.

41.     By virtue of its federal trademark registrations, Plaintiff enjoys constructive notice against the infringement of all individuals or businesses that use the PINK Marks, or confusingly similar iterations thereof.

42.     Defendant, with knowledge of Plaintiff's exclusive rights in and to the PINK Marks and the intent to trade on the goodwill and reputation of Plaintiff in the marketplace, has adopted and used their Infringing Marks with the purpose of confusing the trade and the public as to the origin of Infringing Products.

43.     Defendant's unlawful activities are likely to and, upon information and belief, have already had the result of causing confusion and mistake in the trade and with the purchasing public.

44.     Plaintiff has demanded Defendant to cease infringement of the PINK Marks, but Defendant has failed to cease and desist.  The infringement by Defendant has been deliberate, knowing, and willful.

45.     Defendant's use of the Infringing Marks in connection with such Infringing Products constitutes infringement of Plaintiff's federally registered trademarks, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

46.     Defendant's use of the the Infringing Marks is likely to cause consumer confusion to the detriment of Plaintiff as it is likely to cause, has caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of Defendant's business in that consumers and others are likely to believe that Defendant's Infringing Products are legitimately connected with or approved by Plaintiff in violation of federal law.

47.     Plaintiff is informed and believes, and based thereon alleges that, unless restrained and enjoined by this Court, Defendant will continue to use the Infringing Mark in connection with the advertisement, promotion, offer for sale, and sale of similar Infringing Products, thus infringing Plaintiff's trademark rights, and causing a likelihood of confusion, deception, and mistake among the trade and the consuming public as to the source of the Infringing Products sold by Defendant.

48.     By reason of this unauthorized use of Infringing Marks, which are identical or confusingly similar to Plaintiff's PINK Marks, Defendant has unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiff has suffered, and continues to suffer, substantial damages and irreparable injury, in an amount not yet calculated.

49.     Plaintiff has no adequate remedy at law and is therefore entitled to injunctive relief and any other relief authorized by law.

50.     Defendant's actions are unlawful and have damaged Plaintiff in an amount not yet calculated, and Plaintiff is entitled to recovery of those damages. 15 U.S.C. § 1117.

51.     Defendant's unlawful actions have been deliberate, knowing and willful, making this case exceptional under 15 U.S.C. § 1117.

### COUNT II
**Unfair Competition**
**Under Federal Law - Lanham Act, 15 U.S.C. § 1125(a)**

52.     All foregoing and following allegations are incorporated herein by reference as though fully set forth herein.

53.     Defendant, with knowledge of Plaintiff's exclusive rights in and to the PINK Marks and the intent to trade on the goodwill and reputation of Plaintiff in the marketplace, has adopted and used their Infringing Marks with the purpose of confusing the trade and the public as to the origin of Infringing Products.

54.     Defendant's use of the Infringing Marks constitutes unfair competition, including a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact that Defendant's Infringing Products originate with, are sponsored by, or are

approved by Plaintiff, or that Defendant and its Infringing Products are affiliated with, connected to, or associated with Plaintiff.

55.     Defendant's use of the Infringing Marks has caused and will cause customers and potential customers to mistakenly attribute the reputation of Plaintiff's Goods those of the Defendant.

56.     Plaintiff has no control over the quality of the Infringing Products that are provided, promoted, advertised, and sold by Defendant, with the result that Plaintiff's valuable reputation and goodwill with respect to its PINK Marks will be irreparably injured by the acts of Defendant complained of herein.

57.     Plaintiff is informed and believes, and based thereon alleges that, unless restrained and enjoined by this Court, Defendant will continue to use the Infringing Mark in connection with the advertisement, promotion, offer for sale, and sale of similar Infringing Products, thus infringing Plaintiff's trademark rights, and causing a likelihood of confusion, deception, and mistake among the trade and the consuming public as to the source of the Infringing Products sold by Defendant.

58.     By reason of this unauthorized use of Infringing Marks, which are identical or confusingly similar to Plaintiff's PINK Marks, Defendant has unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiff has suffered, and continues to suffer, substantial damages and irreparable injury, in an amount not yet calculated.

59.     Defendant's unlawful conduct constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

60.     As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer irreparable damage, in an amount not yet calculated.

61.     Plaintiff has no adequate remedy at law and, therefore, is entitled to preliminary and permanent injunctive relief.

62.     Defendant's actions are unlawful and have damaged Plaintiff in an amount not yet calculated, and Plaintiff is entitled to recovery of those damages. 15 U.S.C. § 1117.

63.     Defendant's unlawful actions have been deliberate, knowing, and willful, making this case exceptional under 15 U.S.C. § 1117.

## COUNT III
**Trademark Infringement**
**Under Pennsylvania Law - 54 Pa.C.S.A. § 1123**

64.     All foregoing and following allegations are incorporated herein by reference as though fully set forth herein.

65.     Plaintiff is the owner of federal trademark Registrations for the PINK Marks set forth in this Complaint, and enjoys the exclusive rights to use or license the use of those marks nationwide.  This is a right Colur World has held for the past 20 years.

66.     By virtue of its federal trademark registrations, Plaintiff enjoys constructive notice against the infringement of all individuals or businesses that use the PINK Marks, or confusingly similar iterations thereof.

67.     Defendant, with knowledge of Plaintiff's exclusive rights in and to the PINK Marks and the intent to trade on the goodwill and reputation of Plaintiff in the marketplace, has adopted and used their Infringing Marks with the purpose of confusing the trade and the public as to the origin of Infringing Products.

68.     Defendant's unlawful activities are likely to and, upon information and belief, have already had the result of causing confusion and mistake in the trade and with the purchasing public.

69.     Plaintiff has demanded Defendant to cease infringement of the PINK Marks, but Defendant has failed to cease and desist.  The infringement by Defendant has been deliberate, knowing, and willful.

70.     Defendant's use of the Infringing Marks in connection with such Infringing Products constitutes infringement of Plaintiff's federally registered trademarks, in violation of 54 Pa.C.S.A. § 1123.

71.     Defendant's use of the the Infringing Marks is likely to cause consumer confusion to the detriment of Plaintiff as it is likely to cause, has caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of Defendant's business in that consumers and others are likely to believe that Defendant's Infringing Products are legitimately connected with or approved by Plaintiff in violation of Pennsylvania law.

72.     Plaintiff is informed and believes, and based thereon alleges that, unless restrained and enjoined by this Court, Defendant will continue to use the Infringing Mark in connection with the advertisement, promotion, offer for sale, and sale of similar Infringing Products, thus infringing Plaintiff's trademark rights, and causing a likelihood of confusion, deception, and mistake among the trade and the consuming public as to the source of the Infringing Products sold by Defendant.

73.     By reason of this unauthorized use of Infringing Marks, which are identical or confusingly similar to Plaintiff's PINK Marks, Defendant has unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiff has suffered, and continues to suffer, substantial damages and irreparable injury, in an amount not yet calculated.

74.     Plaintiff has no adequate remedy at law and is therefore entitled to injunctive relief and any other relief authorized by law. 54 Pa.C.S.A. § 1125.

75.    Defendant's actions were committed in deliberate, knowing, willful and wanton disregard of Plaintiff's rights in the PINK Marks, thereby entitling Plaintiff to an award of punitive damages.

## COUNT IV

**Injury to Business or Reputation and Dilution of Trademarks
Under Pennsylvania Law - 54 Pa.C.S.A. § 1124**

76.    All foregoing and following allegations are incorporated herein by reference as though fully set forth herein.

77.    Defendant, with knowledge of Plaintiff's exclusive rights in and to the PINK Marks and the intent to trade on the goodwill and reputation of Plaintiff in the marketplace, has adopted and used their Infringing Marks with the purpose of confusing the trade and the public as to the origin of Infringing Products.

78.    Defendant's use of the Infringing Marks constitutes unfair competition, including a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact that Defendant's Infringing Products originate with, are sponsored by, or are approved by Plaintiff, or that Defendant and its Infringing Products are affiliated with, connected to, or associated with Plaintiff.

79.    Defendant's use of the Infringing Marks has caused and will cause customers and potential customers to mistakenly attribute the reputation of Plaintiff's Goods those of the Defendant.

80.    Plaintiff has no control over the quality of the Infringing Products that are provided, promoted, advertised, and sold by Defendant, with the result that Plaintiff's valuable reputation and goodwill with respect to its PINK Marks will be irreparably injured by the acts of Defendant complained of herein.

81.     Plaintiff is informed and believes, and based thereon alleges that, unless restrained and enjoined by this Court, Defendant will continue to use the Infringing Mark in connection with the advertisement, promotion, offer for sale, and sale of similar Infringing Products, thus infringing Plaintiff's trademark rights, and causing a likelihood of confusion, deception, and mistake among the trade and the consuming public as to the source of the Infringing Products sold by Defendant.

82.     By reason of this unauthorized use of Infringing Marks, which are identical or confusingly similar to Plaintiff's PINK Marks, Defendant has unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiff has suffered, and continues to suffer, substantial damages and irreparable injury, in an amount not yet calculated.

83.     Defendant's unlawful conduct constitutes a violation of 54 Pa.C.S.A. § 1124.

84.     As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer irreparable damage, in an amount not yet calculated.

85.     Plaintiff has no adequate remedy at law and is therefore entitled to injunctive relief and any other relief authorized by law. 54 Pa.C.S.A. § 1125.

86.     Defendant's actions were committed in deliberate, knowing, willful and wanton disregard of Plaintiff's in the PINK Marks, thereby entitling Plaintiff to an award of punitive damages.

<u>**COUNT V**</u>
**Trademark Infringement**
**Under Pennsylvania Common Law**

87.     All foregoing and following allegations are incorporated herein by reference as though fully set forth herein.

88.     Plaintiff is the owner of federal trademark Registrations for the PINK Marks set forth in this Complaint, and therefore Plaintiff owns all common law rights to the PINK Marks nationwide.

89.     Defendant, with knowledge of Plaintiff's exclusive rights in and to the PINK Marks and the intent to trade on the goodwill and reputation of Plaintiff in the marketplace, has adopted and used their Infringing Marks with the purpose of confusing the trade and the public as to the origin of Infringing Products.

90.     Defendant's unlawful activities are likely to and, upon information and belief, have already had the result of causing confusion and mistake in the trade and with the purchasing public.

91.     Plaintiff has demanded Defendant to cease infringement of the PINK Marks, but Defendant has failed to cease and desist.  The infringement by Defendant has been deliberate, knowing, and willful.

92.     Defendant's use of the the Infringing Marks is likely to cause consumer confusion to the detriment of Plaintiff as it is likely to cause, has caused, and will continue to cause confusion, mistake, or deception as to the sponsorship, affiliation, or source of Defendant's business in that consumers and others are likely to believe that Defendant's Infringing Products are legitimately connected with or approved by Plaintiff in violation of Pennsylvania law.

93.     Plaintiff is informed and believes, and based thereon alleges that, unless restrained and enjoined by this Court, Defendant will continue to use the Infringing Mark in connection with the advertisement, promotion, offer for sale, and sale of similar Infringing Products, thus infringing

21

Plaintiff's trademark rights, and causing a likelihood of confusion, deception, and mistake among the trade and the consuming public as to the source of the Infringing Products sold by Defendant.

94.     As a result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer irreparable damage, in an amount not yet calculated.

95.     Plaintiff has no adequate remedy at law and, therefore, is entitled to preliminary and permanent injunctive relief.

96.     Defendant's actions were committed in deliberate, knowing, willful and wanton disregard of Plaintiff's rights in the PINK Marks, thereby entitling Plaintiff to an award of punitive damages.

## COUNT VI
### Unfair Competition
### Under Pennsylvania Common Law

97.     All foregoing and following allegations are incorporated herein by reference as though fully set forth herein.

98.     Defendant, with knowledge of Plaintiff's exclusive rights in and to the PINK Marks and the intent to trade on the goodwill and reputation of Plaintiff in the marketplace, has adopted and used their Infringing Marks with the purpose of confusing the trade and the public as to the origin of Infringing Products.

99.     Defendant's use of the Infringing Marks constitutes unfair competition, including a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact that Defendant's Infringing Products originate with, are sponsored by, or are approved by Plaintiff, or that Defendant and its Infringing Products are affiliated with, connected to, or associated with Plaintiff.

100.    Defendant's use of the Infringing Marks has caused and will cause customers and potential customers to mistakenly attribute the reputation of Plaintiff's Goods those of the Defendant.

101.    Plaintiff has no control over the quality of the Infringing Products that are provided, promoted, advertised, and sold by Defendant, with the result that Plaintiff's valuable reputation and goodwill with respect to its PINK Marks will be irreparably injured by the acts of Defendant complained of herein.

102.    Plaintiff is informed and believes, and based thereon alleges that, unless restrained and enjoined by this Court, Defendant will continue to use the Infringing Mark in connection with the advertisement, promotion, offer for sale, and sale of similar Infringing Products, thus infringing Plaintiff's trademark rights, and causing a likelihood of confusion, deception, and mistake among the trade and the consuming public as to the source of the Infringing Products sold by Defendant.

103.    By reason of this unauthorized use of Infringing Marks, which are identical or confusingly similar to Plaintiff's PINK Marks, Defendant has unlawfully and wrongfully derived, and will continue to unlawfully and wrongfully derive, income and profits from these infringing acts, and Plaintiff has suffered, and continues to suffer, substantial damages and irreparable injury, in an amount not yet calculated.

104.    Defendant's unlawful conduct constitutes a violation of Pennsylvania common law.

105.    As a result of Defendant's conduct, Plaintiff has suffered and continues to suffer irreparable damage, in an amount not yet calculated.

106.    Plaintiff has no adequate remedy at law and, therefore, is entitled to preliminary and permanent injunctive relief.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays that:

107.    That Defendant, its agents, officers, sales representatives, servants, employees, associates, attorneys, successors and assigns, and any and all persons or entities acting by, through, under or in active concert or in participation with any or all of them, be enjoined preliminarily and permanently by Order of this Court from doing, abiding, causing or abetting any of the following:

        a.    directly or indirectly infringing Plaintiff's PINK Marks;

        b.    from passing off, inducing or enabling others to sell or pass off, any of Defendant's goods or services as originating from Plaintiff, or sponsored, approved, or authorized by Plaintiff;

        c.    directly or indirectly engaging in any acts or activities calculated to trade upon Plaintiff's PINK Marks, and/or the reputation or good will of Plaintiff, or in any manner to compete with Plaintiff unfairly;

        d.    using Plaintiff's PINK Marks or the Infringing Marks, or using any mark confusingly similar to the PINK Marks, alone or in combination with other words as a trademark, services mark, domain name, or trade name to identify, market, distribute, advertise, promote, offer for sale, or provide any goods or services;

        e.    from otherwise infringing the PINK Marks; and,

        f.    from otherwise competing unfairly with Plaintiff in any manner whatsoever;

108.    That Defendant be required to remove the PINK Marks and any mark confusingly similar to the foregoing from Defendant's products, website(s), all social media hubs, social media handles, HTML code, search engine query terms, e-mail addresses, and any other electronic communications hosts, links, and devices;

109.    That an accounting be ordered to determine the profits realized by Defendant due to the unauthorized use of Plaintiff's PINK Marks and the Infringing Mark, to include an audit or review of financial reports, balance sheets, tax returns, or other documents sufficient to show Defendant's profits;

110.    That Defendant be directed to file with this Court and to serve on Plaintiff, within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with this injunction;

111.    That Defendant be required to modify its packaging, labeling, promotional materials, apparel, advertisements, signage, and other communications to the public in the possession or under its control bearing thereon any material or representations to remove the Infringing Mark;

112.    That Defendant take all necessary and appropriate steps to recall for destruction all advertising and other materials, including but not limited to signage, advertising and promotion bearing the PINK Marks, the Infringing Marks or any colorable imitation of Plaintiff's PINK Marks and that Defendant be required to remove such PINK Marks and Infringing Marks from its signage, promotional materials, advertisements and other writings;

113.    That Plaintiff be awarded its actual damages and/or a disgorgement of Defendant's profits, arising from Defendant's infringements in an amount to be determined at trial, to be increased to the maximum permitted by law, for its acts of willful infringement;

114.    That judgment be entered in favor of Plaintiff and against Defendant as to each of the above Counts;

115.    That the Court award Plaintiff the costs, including attorneys' fees, and an assessment of interest;

116.    That the Court award Plaintiff's damages on the common law causes of action;

117.    That the award of Plaintiff's damages and/or Defendant's profits be trebled as a result of Defendant's willful and deliberate infringement of Plaintiff's rights;

118.    That the Court finds this case to be exceptional;

119.    That Plaintiff be awarded punitive damages for Defendant's willful and deliberate, unlawful injurious acts complained of herein; and

120.    That Plaintiff be awarded such other relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: April 11, 2025                    By: /s/ *Timothy D. Pecsenye*
                                             Timothy D. Pecsenye (PA ID 51339)
                                             Timothy J. Miller (PA ID 333879)
                                             Blank Rome LLP
                                             One Logan Square
                                             130 North 18th Street
                                             Philadelphia, PA 19103
                                             Telephone: 215-569-5500
                                             Facsimile: 215-689-3424
                                             <pecsenye@blankrome.com>
                                             <timothy.miller@blankrome.com>