IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COLUR WORLD, LLC,                          :
                                           :
                          *Plaintiff,*     :
                                           :
              v.                           :        2:25-cv-01889
                                           :
SUPMEDIC, INC.,                            :
                                           :
                          *Defendant.*     :

## OPINION

## I.    Introduction and Factual Background

At the click of a mouse, anyone can purchase almost anything and have that thing delivered to almost any address across the globe. The convenience of e-commerce has welcomed to the marketplace new consumers and new merchants alike. These advancements have produced modern factual scenarios that require courts to reexamine and apply nineteenth and twentieth century concepts of personal jurisdiction to twenty-first century parties and technology. The instant motion to dismiss calls on the Court to engage in such a modern age reexamination.

Plaintiff Colur World, LLC, (Colur World), is a Delaware company, having its principal place of business in Folcroft, Pa., here in the Eastern District of Pennsylvania. According to its Complaint, Colur World is the exclusive owner of all right, title, and interest in certain trademarks (Pink Marks) for dental and medical gloves. Since 2007, it has licensed the rights to use the Pink Marks to prominent manufacturers and distributors of gloves in the medical and dental fields. *See* Pl's

Compl. at ¶¶9-15.   Colur World claims that because of its longstanding and continuous marketing, promotion, advertisement, and sale of its Pink Marks, consumers have come to immediately associate its Pink Marks with Colur World and to expect goods bearing that trade dress to have an association with Colur World.  *See id.* at ¶19.

Defendant Supmedic, Inc. (Supmedic) is a California corporation having its principal place of business in southern California.  Ivan Zhou, CEO founder and sole shareholder of Supmedic, is also a California resident.  *See* Zhou Decl. at ¶¶ 1, 8. Supmedic is a manufacturer, distributor, importer, and wholesaler of disposable gloves, including exam-grade gloves made of nitrile for medical and/or dental use and has its own registered trademarks (Defendant Marks) for nitrile gloves which it uses in connection with its business. *See* Pl's Compl. at ¶¶21-22.

Colur World alleges that, notwithstanding its commercial rights in the Pink Marks, Supmedic unlawfully adopted and used the Pink Marks on nitrile medical and dental gloves.  *See id.* at ¶¶23-24.  According to Colur World, Supmedic does this by way of an imitation or confusingly similar trade dress directly on its packaging (Infringing Products),[1] as well as in its related marketing and promotion of such goods.  *See id.*  Colur World has never consented to Supmedic's use of the Pink Marks. *See id.* at ¶31.

Colur World further alleges that while Supmedic does not currently sell Infringing Products directly from its proprietary website, its website links to various

---

[1]    While this Court uses the defined term "Infringing Products" for simplicity, this should be understood as a judgment at this state that any infringement has occurred.

internet pages offering the Infringing Products for sale, including through an "Amazon Storefront." *See id.* at ¶28. Colur World alleges that Supmedic sells these Infringing Products alongside presumably otherwise legitimate products online. *See id.* at ¶¶25, 28. Supmedic concedes that it sells its products on Amazon and that approximately 3.4% of its *total sales* over that platform were made to Pennsylvania customers. *See* Zhou Decl. at ¶5.

In January 2025, Colur World sent a cease-and-desist notice to Supmedic, placing it on actual notice of its alleged infringement of Plaintiff's intellectual property rights and instructing Supmedic to immediately stop further use of the Pink Marks. Shortly thereafter Colur World sent a second correspondence clarifying and reiterating the scope of its trademark rights. Despite these letters, Supmedic continued its sale of Infringing Products *via* an Amazon Storefront and other third-party e-commerce platforms. *See* Pl.'s Compl. at ¶¶34-36.

On April 11, 2025, Colur World filed this action here in the District Court for the Eastern District of Pennsylvania alleging violations of the Lanham Act, 15 U.S.C. § 1501 *et seq.*, as well as Pennsylvania statutory and common law trademark infringement and unfair competition claims. Specifically, Colur World asserts that Supmedic's conduct is designed to trade upon the valuable goodwill and business reputation associated with the Pink Marks and that Colur World has been, and will continue to be, irreparably injured absent injunctive relief. Colur World also seeks an accounting to determine the profits realized by Supmedic due to the unauthorized use of the Pink Marks, monetary damages, and attorneys' fees.

Opting not to address the merits at this stage, Supmedic has moved to dismiss Colur World's Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). *See* Dkt. 13 (Def's Mot. to Dismiss).  Relevant here, Supmedic argues that it did not purposefully direct any activities towards Pennsylvania and that its only connection with this forum is a modicum of sales through Amazon to the Commonwealth. *See* Def.'s Mot. at 4.  Supmedic further argues that Colur World's claims do not arise out of, or relate to, Supmedic's contacts with Pennsylvania and that it would offend fair play and substantial justice for this Court to exercise *in personam* jurisdiction over it. *See id.* at 6-8.  Alternatively, Supmedic makes clear that it would be open to a transfer to the United States District Court for the Central District of California if this Court determined a transfer would serve the interest of justice. *See id.* at 8, n.1 (*citing* 28 U.S.C. § 1631).

In response, Colur World asserts that Supmedic actively targets and engages in the sale of Infringing Products to Pennsylvania through various aliases, vendors, and websites. *See* Dkt. 16 (Pl's Resp. in Opp'n at 13).  Colur World's argument follows that Supmedic should reasonably anticipate litigation in this forum. *See id.*  Colur World further asserts that at least one of the e-commerce platforms used by Defendant has its principal place of business here in the Eastern District of Pennsylvania. *See id.* at 14.

Additionally, Colur World argues that Supmedic's sale of Infringing Products *via* third party platforms into this forum directly causes the harm at issue in this suit.  Thus, the Court's exercise of personal jurisdiction would comport with the accepted constitutional standards of fair play and substantial justice. *See id* at 20-

22.    Alternatively, Colur World asks for jurisdictional discovery to determine Supmedic's contacts with Pennsylvania by way of its sale of Infringing Products through third party e-commerce platforms. *See id.* at 23. Supmedic's 12(b)(2) motion is ripe for decision.

Because this Court does not view Amazon storefronts as a distributor distinct from the seller, and because the complaint, as well as the attached exhibits and affidavits, indicate continuous claim-related sales and shipments of infringing products into the Pennsylvania, Supmedic's Motion to Dismiss for Lack of Personal Jurisdiction is denied.  Accordingly, there is no need for bifurcated jurisdictional discovery.

## II.    Standard of Review for Rule 12(b)(2)

In deciding motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2), district courts must accept as true the allegations of the pleadings and all reasonable inference drawn therefrom. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).  "However, unlike Rule 12(b)(6), Rule 12(b)(2) does not limit the scope of the court's review to the face of the pleadings.  Consideration of affidavits submitted by the parties is appropriate and, typically, necessary." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 556 (M.D. Pa. 2009) (citations omitted).

Once a defendant raises a jurisdictional defense, supported by affidavits or other competent evidence, the plaintiff must prove by way of similar supporting evidence that jurisdiction is proper. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  "At no point may a plaintiff rely on the bare pleadings

alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations." *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d at 556-557. (cleaned up) (*citing Paterson by Paterson v. F.B.I.*, 893 F.2d 595, 603-604 (3d Cir. 1990).

If the district court declines to hold an evidentiary hearing, or declines a request for jurisdictional discovery, plaintiffs need only establish a *prima facie* case of personal jurisdiction and are entitled to have their allegations taken as true.  *See O'Connor*, 496 F.3d at 316.  Importantly, the Court is not precluded from revisiting the issue of jurisdiction if, during the life of the case, the facts alleged to support personal jurisdiction continue to be in dispute.  *See Metcalfe*, 566 F.3d at 331 (*citing Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992)).

## III.    Analysis

District courts presiding over a cause of action must possess personal jurisdiction over the named defendant.  "[A] [d]istrict [c]ourt typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor*, 496 F.3d at 316 (*citing* Fed. R. Civ. P. 4(k)(1)(A)).  Pennsylvania's long-arm statute contemplates personal jurisdiction to the fullest extent allowed by the Constitution of the United States and may be based on the most minimum contact permitted under our Charter.  *See id*; 42 Pa.C.S.A. § 5322(b).  Accordingly, in this case the personal jurisdiction inquiry distills neatly into whether, under the Due Process Clause of the Fourteenth Amendment, the defendant has certain minimum contacts with Pennsylvania such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice.  *O'Connor*, 496 F.3d at 316-317 (*citing Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction is typically divided into two categories: (1) general jurisdiction, and (2) specific jurisdiction.  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984).  General jurisdiction exists when the defendant's contacts with the state are so continuous and systematic as to render them essentially at home in the forum.  *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (*citing Helicopteros*, 466 U.S. at 414 n.9).  Colur World concedes in its briefing that for the purposes of Supmedic's motion it is not arguing this Court has general jurisdiction over Supmedic.  *See* Pl.'s Resp. in Opp'n at 12, n.9.

"In the absence of general jurisdiction, a court may find and exercise specific jurisdiction over a non-resident defendant for forum-related activities where the relationship between the defendant and the forum falls within the minimum contacts framework of [*Int'l Shoe Co.*] and its progeny."  *Zhang v. AAGGO*, No. 2:25-CV-85, 2025 WL 1158909, at *3 (W.D. Pa. Apr. 21, 2025) (cleaned up) (*citing Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997)).

Our High Court has established two tests to for specific jurisdiction: (1) the **traditional/minimum contacts test**, and (2) the **effects test**.  *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 186 (3d Cir. 2024) (*citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) *and Calder v. Jones*, 465 U.S. 783, 787 (1984)); *see also O'Connor*, 496 F.3d at 317 n.2.  The **traditional test** calls on courts to engage in a three-part inquiry.  First, "the plaintiff must show that the defendant has

minimum contacts with the forum such that it *purposefully availed itself* of the privilege of conducting activities within the forum and invoked the benefits and protections of the forum's laws." *Hasson*, 114 F.4th at 186. (emphasis added). Second, the plaintiff's claims must arise out of or relate to those minimum contacts – establishing a relationship between the defendant, the forum, and the litigation. *See id.*

Finally, if the plaintiff succeeds in establishing the first two factors, the court evaluates whether the defendant's contacts with the forum are such that the maintenance of the action does not offend traditional notions of fair play and substantial justice. This final step has historically been tested against whether "the defendant should reasonably anticipate being hauled into court in [the] forum." *Toys "R" Us, Inc.*, 318 F.3d at 451 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This final step acts as an independent safety valve for circumstances where a defendant may have sufficient minimum contacts with the forum to confer personal jurisdiction, but inconvenience or efficiency make exercise of such jurisdiction fundamentally unfair or unreasonable. ALAN M. TRAMMELL, DEREK E. BAMBAUER, *Personal Jurisdiction and the "Interwebs"*, 100 Cornell L. Rev. 1129, 1138 (2015)

The **effects test** – distilled from *Calder v. Jones* – is similarly organized around a three-step inquiry. 465 U.S. 783 (1984). To satisfy the effects test, the plaintiff's complaint and supporting documents must establish that: (1) defendant committed an *intentional tort*; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson*,

114 F.4th at 187 (emphasis added) (*citing Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001); *see also Toys "R" Us, Inc.*, 318 F.3d at 455 n.6 (observing that in the Third Circuit personal jurisdiction may, under certain circumstances, be based on the effects in the forum state of a defendant's intentionally tortious conduct elsewhere). Depending on the nature of defendant's forum-related activities – whether tangible or intangible harms are alleged, whether the claims involve intentional torts or are subject to strict liability,[2] or whether defendant's contacts are virtual as opposed to physical – the lens through which courts evaluate a party's minimum contacts may change. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 366 n.4 (2021) (explaining that internet transactions raise distinct doctrinal questions of their own).

---

[2]     *But see Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090–91 (9th Cir. 2023) (holding that effects test is not limited to intentional torts but also includes intentional "tort-like" acts), cert. denied, 144 S. Ct. 693, 217 (2024).  The Undersigned cites *Herbal Brands, Inc.* throughout this case because of its factual similarities to the instant matter, its reference to the Third Circuit (as well as the Third Circuit's reference to it), and its examination of the functionality of Amazon storefront's generally.  While not part of the legal analysis, it is not lost on this Court that the 9th Circuit, which has jurisdiction over Silicon Valley, may have a particular insight into virtual information that is indifferent to geography boundaries.  *See* TRAMMELL & BAMBAUER, *supra*, at 1152.

        In *Herbal Brands, Inc.*, plaintiff, a manufacturer/distributor of health supplements, sued defendant, an online seller, for Lanham Act violations as well as tortious interference with contractual relations.  Seller was a New York entity using Amazon storefront to distribute allegedly infringing products.  Plaintiff alleged that defendants sold products to the forum residents through its regular course of business – but without access to sales data, plaintiff was unable to determine the number of sales to the forum.  Upon motion, the district court dismissed for lack of personal jurisdiction, holding that plaintiff failed to meet its burden of demonstrating that sellers expressly aimed their conduct to the forum and predicting that discovery would reveal only sporadic sales to the forum.

        A unanimous panel reversed the district court, holding that defendants were subject to personal jurisdiction in the forum because sales occurred as part of defendant's regular course of business instead of being random, isolated, or fortuitous and defendants exercised control over the distribution by choosing to operate on a universally accessible website that accepts orders from residents nationwide.  *Id.* at 1094-1095.

Here, neither party seems to be engaging the effects test and neither party cites to *Calder v. Jones*. To the extent personal jurisdiction is proper, the Court will rely on the traditional minimum contacts test.

### a. Purposeful availment

In the context of virtual sales, our sister court's trailblazing opinion in *Zippo* proved to be an early authority regarding personal jurisdiction and internet contacts. *Toys "R" Us, Inc.*, 318 F.3d at 452.

> *Zippo* stressed that the propriety of exercising jurisdiction depends on where on a sliding scale of commercial interactivity the web site falls. In cases where the defendant is clearly doing business through its web site in the forum state, and where the claim relates to or arises out of use of the web site, the *Zippo* court held that personal jurisdiction exists …
>
> [T]he *Zippo* court [ ] underscored the intentional nature of the defendant's conduct *vis-a-vis* the forum state. In *Zippo*, the defendant had purposefully availed itself of doing business in Pennsylvania when it *repeatedly and consciously chose to process Pennsylvania residents' applications* and to assign them passwords, knowing that the contacts would result in business relationships with Pennsylvania customers.

*Id.* (emphasis added).

The Third Circuit advanced the analysis regarding online commercial activity and specific jurisdiction in its own vanguard case, *Toys "R" Us*. There, Toys "R' Us, brought a trademark infringement action in the United States District Court for the District of New Jersey against a Spanish corporation, Step Two S.A., for alleged violations of the Lanham Act and related state law claims. Specifically, Toys "R" Us alleged that Step Two S.A. sold, through its own online website, certain infringing products related to marks owned by Toys "R" Us. *See id* at 448. Notably, the delivery function on Step Two's website did not accommodate addresses in the forum or

anywhere in the United States.  *See id* at 450.  The connection to the forum arose from a Toys "R" Us employee having the infringing items delivered to Madrid and then forwarding those items to Toys "R" Us headquarters in New Jersey.  *See id.*  The District of New Jersey denied jurisdictional discovery and granted Step Two's motion to dismiss for lack of personal jurisdiction.

On appeal, the Third Circuit framed the issue as "whether the operation of a commercially interactive web site accessible in the forum state is sufficient to support specific personal jurisdiction, or whether there must be additional evidence that the defendant has purposefully availed itself of the privilege of engaging in activity in that state."  *Id.* at 451.  The panel held that based on the record below, Step Two's maintenance of interactive commercial websites in Spain did not appear to have been designed or intended to reach customers in New Jersey.[3]  *See id* at 454.  The Court held that "there must be evidence that the defendant purposefully availed itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state *via* its web site, or through sufficient other related contacts."  *Id.*

In coming to its conclusion, the panel highlighted some critical facts.  Notably, Step Two's websites were entirely in Spanish, prices for the merchandise were listed in foreign currency, merchandise could be shipped only to addresses within Spain and nothing on Step Two's websites were designed to accommodate addresses within the United States.  *See id.*  The Court further remarked that the record below indicated

---

[3]    Ultimately the Court reversed the district court's denial of jurisdictional discovery and remanded.  *Toys "R" Us, Inc.*, 318 F.3d at 455.

that there were only two documented sales to the relevant forum which appeared to be orchestrated by the Plaintiff to solicit specific jurisdiction in New Jersey.[4]  This without more, did not establish specific jurisdiction over Step Two.

Since *Zippo* and *Toys "R" Us*, circuit courts have pioneered somewhat distinct evolutions of which online commercial activity will subject a defendant to specific personal jurisdiction.  *See Herbal Brands, Inc.*, 72 F.4th at 1095-1097 (collecting cases); TRAMMELL & BAMBAUER, *supra*, at 1150.  While our High Court has observed that the internet presents its own doctrinal problems with respect to personal jurisdiction, it has yet to install any unifying update for the lower courts.  *See Ford Motor Co.*, *supra*.

To further complicate matters, the issue of third-party internet sales platforms like Amazon storefronts or Walmart online marketplaces creates at least the perception that the defendant is further removed from the purposeful availment that due process requires.  Does a defendant target a specific forum when it "targets the world by selling products from a website? And does it matter if, instead of shipping the products directly, a company consigns the products through an intermediary … who then receives and fulfills the orders?" *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 890 (2011) (Breyer, J., concurring).

District courts around the country have yet to coalesce around a consistent theory regarding whether sales through interactive third-party websites, such as

---

[4]     There is some indication that other courts may disfavor claimant attempts to manufacture jurisdiction in this way.  *See e.g., Herbal Brands, Inc.*, 72 F.4th at 1097 (collecting cases and stating that "[d]epending on the particular facts of a future case, jurisdiction may not exist if a plaintiff purchases a product solely in an attempt to manufacture jurisdiction.").

Amazon, meet the purposeful availment criterion.  *See* 1 GEORGE W. THOMPSON, *Transnational Contracts* § 9:7, nn.106-114 (2024).  Similarly, courts in this circuit, once the nursery for virtual personal jurisdiction analysis,[5] have yet to establish "a consensus view as to whether [a defendant's use of] a third-party distributor imputes the distributors' broader scope of specific jurisdiction[.]"  *BGSD, Inc. v. SPAZEUP, LLC*, No. 5:23-CV-4855, 2024 WL 688665, at *4 (E.D. Pa. Feb. 20, 2024) (Leeson, J.)[6] (*citing Flipside Wallets LLC v. Brafman Grp. Inc.*, No. CV 19-5356, 2020 WL 1330742 (E.D. Pa. Mar. 19, 2020) (Pappert, J.))

The Third Circuit has never "held that simply fulfilling an online sale and causing a product to be delivered in a forum suffices for personal jurisdiction." *Hasson*, 114 F.4th at 195 n.5 (distinguishing its reasoning from the 9th Circuit in *Herbal Brands, Inc.*); *cf. Nifty Home Prods. Inc. v. Ladynana US*, No. 23-1332, 2024 WL 4987245, at *3 (3d Cir. Dec. 5, 2024) (holding that in the context of an online infringement action, defendant made a colorable argument that a single transaction was insufficient to demonstrate purposeful availment).  In recent years, several district courts in this circuit have reasoned that "jurisdiction will not attach absent any evidence of actual sales to the forum state." *BGSD, Inc.*, 2024 WL 688665, at *3;

---

[5]    *See Toys "R" Us, Inc.*, (Zippo has become a seminal authority regarding personal jurisdiction based upon the operation of an internet website); TRAMMELL & BAMBAUER, *supra*, at 1132 ("Most courts to confront the problem of Internet-based jurisdiction have relied favorably on *Zippo*[.]"

[6]    The Court is careful to distinguish the first iteration of *BGSD, Inc.*, from *BGSD, Inc. v. SpazeUp, LLC*, No. 5:23-CV-4855, 2024 WL 1619279 (E.D. Pa. Apr. 15, 2024) (Lesson, J.).  In *BGSD I*, Judge Lesson denied plaintiff's motion for default judgment, observing that the court did not have personal jurisdiction over the defendant as nothing in the pleadings up until that point had demonstrated that conduct occurred in Pennsylvania.  In *BGSD II*, plaintiff refiled its motion with sufficient facts to establish jurisdiction, including evidence of actual sales to Pennsylvania.  *See id.* at *3.

*see also Zhang*, 2025 WL 1158909, at *3. Some of our sister courts have even held that evidence of actual sales to the forum does not necessarily merit a finding that personal jurisdiction is proper. *See e.g. Philadelphia Indem. Ins. Co. v. Dreamershop Trade Ltd.*, No. 2:24-CV-1569, 2025 WL 2282567, at *3 (W.D. Pa. Aug. 8, 2025) (one sale – no purposeful availment); *Flipside Wallets LLC*, 2020 WL 1330742 at *3 (seven sales – no purposeful availment).

In this way, it seems our Circuit is establishing one pole on the spectrum of the interactivity required to establish purposeful availment in the context of online third-party distributors. The above cases indicate that intermittent or marginal sales *via* a virtual storefront intermediary, absent any other contacts, are insufficient to establish personal jurisdiction. However, continuous claim-related sales and shipments of infringing products into the forum – particularly from a sophisticated merchant in its regular course of business – indicates a level of purposeful availment that due process can tolerate. *Compare Zhang,* 2025 WL 1158909, at *4 (finding specific personal jurisdiction because defendants made numerous documented sales *via* online third-party platforms) *with Guidecraft, Inc. v. OJCommerce, LLC*, No. 2:18-CV-01247, 2019 WL 2373440, at *5, report and recommendation adopted, No. 2:18-CV-01247-LPL, 2019 WL 2371645 (W.D. Pa. May 20, 2019*), and, Flipside Wallets LLC*, 2020 WL 1330742 (both finding use of Amazon is insufficient to satisfy purposeful availment); *see also* THOMPSON, *supra*, § 9:7 (2024) ("when a sophisticated seller operates a commercial business through eBay or Amazon that engages in numerous transactions, it is more likely to be transacting business in the forum state.")

Against this backdrop, we must decide the instant matter. Plaintiff Colur World asserts several theories of the case, including that Defendant Supmedic contracts with a distributor that has its principal place of business in the Eastern District. *See* Pl's Resp. in Opp'n at 6. Even if this Court were to accept that the allegation of an at-home distributor were sufficiently pled in Colur World's Complaint, "the bare fact that a non-resident defendant contracted with a resident distributor is not enough to establish personal jurisdiction in the" forum. *Shuker v. Smith & Nephew, PLC,* 885 F.3d 760, 780 (3d Cir. 2018) (cleaned up) (*citing Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.,* 582 U.S. 255, 268 (2017)). Instead, a finding that Colur World has made a *prima facie* presentation of this Court's specific jurisdiction over Supmedic is going to depend on whether Supmedic's use of Amazon storefronts to deliver 3.4% of its sales to the forum constitutes purposeful availment, or, if the use of such platforms is an effort to exploit a national market which necessarily includes Pennsylvania. *Cf. Shuker*, 885 F.3d at 780 (efforts to exploit a national market, without specific targeting, insufficient to establish specific jurisdiction).

A nationwide review of the law's treatment of the evolution of online sales and product distribution through third-party platforms suggests that use of Amazon storefronts, as opposed to a defendant's own proprietary website, does not by itself effect the jurisdictional analysis. *See Herbal Brands, Inc.*, 72 F.4th at 1088 n.1, 1092 n.4 (explaining functionality of Amazon storefronts and finding it analogous to using the post office to deliver goods to the forum); *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (holding that use of Amazon storefront unequivocally

15

demonstrated a willingness to ship goods to the forum); *see also  Poppington, LLC v. Brooks*, No. 20-CV-8616, 2021 WL 3193023, at *2 (S.D.N.Y. July 27, 2021) (holding that personal jurisdiction attaches where commercial vendors use a third-party like Amazon or eBay to establish regular business with the forum); *Douglas Co., Inc. v. My Brittany's LLC*, No. 19-CV-1234-SM, 2020 WL 2768973, at *4 (D.N.H. May 28, 2020); (using intermediaries like Amazon to sell and ship products has no bearing on the minimum contacts analysis); *Leach v. Pharmedoc Inc.*, No. CIV-16-1034-M, 2017 WL 943959, at *2 (W.D. Okla. Mar. 9, 2017) (finding that even though defendant did not personally manage Amazon.com webpage, because defendant was operating a commercial business through Amazon internet-based activities established regular business with the forum).  In fact, several district courts in this circuit have accepted, without much analysis, a defendant's use of Amazon as sufficient to confer jurisdiction.  *See Zhang*, *supra*; *Philadelphia Indem. Ins. Co., supra.*

Here, Colur World properly alleges that Supmedic delivered infringing products through Amazon, and Supmedic concedes in and affidavit from its CEO that 3.4% of its total Amazon sales were to Pennsylvania customers.  Based on the foregoing, Supmedic's argument that it "does not directly sell to or any individual business in Pennsylvania" and that it does not "direct or target Amazon sales towards Pennsylvania … because Amazon is a general e-commerce platform accessible nationwide" falls flat.  Def's Mot. at 2.

Supmedic points to two district court cases to support its argument that it has not purposefully availed itself of the forum.  First, it cites *Colur World, LLC v. Schneider Med. Indus.*, No. CV 24-1507, 2024 WL 3889620 (E.D. Pa. Aug 21, (2024)

(Sanchez, J.). That case, brought by the same plaintiff regarding the same Pink Marks, is nearly identical to the instant action. There, plaintiff alleged that defendant was delivering infringing products to Pennsylvania *via* its Amazon sales page. *See id.* at *3. Judge Sanchez found that the use of Amazon alone was not enough to demonstrate purposeful availment. *See id.* Distinct from matter before this Court, in *Schneider*, there was no affidavit conceding a quantifiable number of actual sales to the forum. The Court found plaintiff's jurisdictional claims in that action to be broad and misleading. *See id.* at n.2.

Here the filings go further than they did in *Shneider*. Supmedic acknowledges that a quantifiable representative portion of its sales are delivered to Pennsylvania. This distinction makes *Schneider* particularly unpersuasive for Supmedic and tacitly supports Colur World's argument in this trademark action.

Next, Supmedic cites *Guidecraft, Inc.*, 2019 WL 2373440, at *5. The plaintiff in that case made similar arguments – namely that "[d]efendant sells products throughout the United States, including the Commonwealth of Pennsylvania[.]" *Id.* at *6. The court in *Guidecraft* did not address whether the parties could surmise definite sales in the forum outside of the plaintiff's broad allegations.[7] Ultimately the Court determined that plaintiff did not show defendants *knowingly* contacted Pennsylvania or directly targeted its commercial activities to Pennsylvania. *See id.*

---

[7]    *Flipside Wallets LLC* cites *Guidecraft, Inc.* for the proposition that use of third-party websites to facilitate sales does not satisfy purposeful availment. *See Flipside Wallets LLC*, 2020 WL 1330742, at *3. While this Court is not sure that the Court in *Guidecraft* went so far, it goes without saying that this Court is not bound by the conclusions of other district courts. "Even where the facts of a prior district court case are, for all practical purposes, the same as those presented to a different district court in the same [circuit.] *Threadgill v. Armstrong World Industries, Inc.*, 928 F.2d 1366 (3d Cir. 1991).

at *5.  The court in *Guidecraft* did however recognize the *Zippo* court's pronouncement that personal jurisdiction is proper if defendant engages in business that involves "the knowing and repeated transmission" of deliveries over the internet. *See id.* (*citing Zippo Mfg. Co.*, 925 F. Supp. at 1124).  This Court concludes that such knowing and repeated transmission of sales is present in the case at bar.

3.4% of total sales is not an insignificant figure.  It is representative of the sort of regular and continuous business activity that other courts have found suffices for purposeful availment.  Thus, there is sufficient information on the pleadings and attached material to find that Colur World has made a *prima facie* showing of this Court's personal jurisdiction over Supmedic.

It is important to note that the Court is not making mathematical assessment. The Supreme Court has warned that a rigid jurisdictional formula would amount to an arbitrary enforcement of sovereign power.  *See Burger King Corp.*, 471 U.S. at 485-486.  However, the percentage of total sales in this case goes directly to the "quality and nature of [the] interstate transaction[.]"  *Id.* at 486.  It is indicative of "knowing and repeated transmission" of business to the forum arising to the level of purposeful availment.  *Zippo Mfg. Co.*, 952 F. Supp. at 1124.  This Court has no choice but to conclude that Supmedic structured its sales activity in such a manner as to invite regular orders from Pennsylvanians.  The amount of sales activity is an indication that Supmedic's contacts with Pennsylvania are not "random, isolated, or fortuitous." *Ford Motor Co.*, 592 U.S. at 359.  It cannot now disclaim these contacts by saying Amazon is a general e-commerce platform accessible nationwide.  *Compare* Def.'s Mot to Dismiss, at 2, *with*, *NBA Props., Inc.*, 46 F.4th at 625.

### b. Relatedness

This Court also finds Supmedic's arguments regarding relatedness to be misplaced. Supmedic asserts that for Colur World to satisfy the relatedness requirement, it must demonstrate that "but-for" Supmedics contacts with the forum, the alleged harm in this matter would not have arisen. Def.'s Mot., at 6 (*citing Burry v. Cach LLC,* No. CIV.A. 14-2139, 2015 WL 328182, at \*6 (E.D. Pa. Jan. 22, 2015) (Slomsky, J.)) Supmedic's argument follows that "it is only the sales of products accused of infringement in this trademark action that are relevant to the [relatedness] analysis[.]"

Even if this Court were to agree with Supmedic's view of the law, the record before it is as follows: (1) Colur World has alleged that Supmedic sold infringing products into the forum *via* Amazon and other online third-party distributors. *See* Pl.'s Compl. at, ¶¶8, 26. (2) Supmedic's CEO conceded in an affidavit that 3.4% of its total Amazon sales were sales to the forum. *See* Zhou Decl. at ¶5. And (3) Supmedic has not argued or presented any evidence that none of the sales to Pennsylvania were Infringing Products. In this Court's view, the above represents a *prima facie* showing supporting personal jurisdiction.

Further, Supmedic cites primarily contracts cases for its assertion that this Court should apply a "but-for" test to the relatedness analysis. *See* Def.'s Mot., at 6-7. These comparisons are unpersuasive. In *O'Connor*, the Third Circuit observed that it "has never adopted a definitive approach to the relatedness requirement" and has rejected "categorical determinations." *O'Connor*, 496 F.3d at 320. There, the Third Circuit also signaled that in some approaches, the relatedness analysis may

shift depending on the cause of action. *Cf. id.*, at 319 (Nonetheless, in contract cases we have effectively required…); *see also id.* at n.8 (*in a case like this*, the contractual contact is a but for causative factor …") (emphasis added; citation and internal quotation marks omitted). Ultimately, the panel in *O'Connor* held that "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test[,]" but cautioned that "there is no specific rule susceptible to mechanical application in every case." *Id.* at 323.

Many years later in *Ford Motor Co.*, our Supreme Court explained that the relatedness prong "contemplates that some relationships will support jurisdiction *without a causal showing*." *Ford Motor Co.*, 592 U.S. at 362 (emphasis added). A few years after *Ford Motor Co.*, the Third Circuit in *Hasson* indicated that "the degree of relatedness required in a given case is inversely proportional to the overall intensity of the defendants forum contacts."[8] 114 F.4th at 193 (cleaned up). This appears to be a relaxation of the requirements advanced in *O'Connor*. To the extent *Ford Motor Co.*'s relatedness analysis clashes with *O'Connor's*, this Court is obliged to apply *Ford Motor Co.*

Distinct from contract cases, the types of harms that stem from trademark infringement claims make their relationship to a particular forum somewhat unique. These claims typically focus on intangible harms like dilution, initial interest confusion, and post-sale confusion. *See* TRAMMELL & BAMBAUER, *supra*, at 1176-1177

---

[8]      *Hasson* cites *O'Connor* for this proposition but the Court in *O'Connor* seemed to disclaim this inverse relationship/hybrid approach. *See O'Connor* 496 F.3d at 321.

n.260.  Here, Colur World has alleged similar harms throughout its complaint.  *See* Pl.'s Compl at ¶¶ 43, 46, 68, 79.

The sale of an infringing product not only directly offsets profits that rightly belong to the proper mark holder with respect to that product (in this case the Pink Marks), but it also can have derivative effects on the proper mark holders brand name more generally.  This confusion in the market can negatively impact a mark holder's goodwill and reputation across offered products.  Thus, the cause-and-effect analysis with respect to infringement harms is more attenuated than in a contract action, where the contractual contact is a but for causative factor.  Infringement harms – and by analogy the remedies for those harms – have less to do with the sale of a particular infringing product but must also consider the downstream deflation in brand name value that the infringement precipitates.  *See* TRAMMELL & BAMBAUER, *supra*, at 1177.  This is not to say that intellectual property claims categorically support personal jurisdiction absent a causal showing.  But here, in light of the concession of significant business activity in the forum, Supmedic's behavior seems to fit *Ford Motor Co.*'s observations regarding relatedness hand-in-glove – even without quantifiable data regarding how many *infringing products*, if any, were sold to the forum.[9]

---

[9]     The Court acknowledges *O'Connor*'s warning that formless relatedness standards may have the effect of merging the general and specific jurisdiction analysis.

### c. Fair play and substantial justice

Finally, having determined that minimum contacts exist, it is defendant's burden to demonstrate that the Court's exercise of personal jurisdiction would ultimately offend traditional notions of fairness and substantial justice. This burden is a heavy one. *See O'Connor*, 496 F.3d at 324. "[W]hen balancing jurisdictional reasonableness [courts consider] the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief [and] the interstate judicial system's interest in obtaining the most efficient resolution of controversies[.]" *Id.*

This Court is unpersuaded that its personal jurisdiction over defendant is fundamentally unfair or unreasonable.[10] Colur World has brought Pennsylvania statutory and common law claims. Pennsylvania certainly has an interest in adjudicating disputes sounding in Pennsylvania law. Further, there is nothing to be gained in the way of efficiency by transferring this case to any other district. Additionally, email correspondence in Exhibit F of Colur World's Complaint seems to indicate (on the part of Supmedic) a sophisticated sales operation with multiple brand names and competent in-house legal counsel. *See* Pl.'s Compl. at Ex. F. Stated differently, Supmedic does not present as the humble "Appalacian potter" from Justice Breyer's concurrence in *Nicastro*. *Nicastro*, 564 U.S. 873, 891 (Breyer, J., concurring). It follows that the burden on Supmedic to defend itself in Pennsylvania

---

[10]    Supmedic's arguments regarding fair play and substantial justice are frail, spanning just a single page. *See* Def.'s Mot. at 7-8. In accordance with this Court's guidelines, Supmedic did move for leave to file a reply to Plaintiff's response. *See* Dkt. 17. That motion did not include any indication that Supmedic sought to bolster its position on why this Court's exercise of personal jurisdiction over it is fundamentally unfair and was ultimately denied. *See id.*; Dkt. 18.

for harms stemming from its continued business activity here, is not out of step with fair play and substantial justice.

In conclusion, the parties should be reminded that this Court is not precluded from revisiting the issue of jurisdiction if, during the life of the case, the facts alleged to support personal jurisdiction continue to be in dispute. *See Metcalfe*, 566 F.3d at 331. However, at this juncture Colur World has carried its burden. This Court's exercise of personal jurisdiction over the Defendant is proper and the case is permitted to move towards its next phase. An appropriate order will follow.

Date: September 9, 2025                    BY THE COURT:

 

 

_____

GAIL A. WEILHEIMER, J.